Filed 3/15/16  P. v. Rodriguez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHRISTIAN RODRIGUEZ, et al., <br><br> Defendants and Appellants. | F067806 <br><br> (Super. Ct. No. F10902527) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from judgments of the Superior Court of Fresno County.  Wayne R. Ellison, Judge.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant Christian Rodriguez.

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant Gilbert Beltran.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant Esteven Landeros.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Brian G. Smiley and Laura Wetzel Simpton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Gilbert Beltran, Esteven Landeros, and Christian Rodriguez were jointly tried and convicted on charges of conspiracy and other felonies arising from a series of home invasion robberies committed in the counties of Fresno and Merced in early 2010. Their trials were severed from those of other co-conspirators with whom they were indicted in connection with these events. Beltran was sentenced to 21 years and eight months in prison, Landeros was sentenced to a 32-year prison term, and Rodriguez's prison sentence totaled 30 years and eight months.

In this consolidated appeal, Beltran challenges the sufficiency of the evidence supporting an enhancement finding for personal use of a firearm within the meaning of Penal Code section 12022.5, subdivision (a) (all further statutory references are to the Penal Code). In the alternative, Beltran claims the trial court abused its discretion by imposing the upper term of 10 years for that particular enhancement. Landeros and Rodriguez allege error in the trial court's imposition of consecutive sentences for the crimes of robbery and witness intimidation, arguing punishment for the latter offense should have been stayed pursuant to section 654. Landeros further contends that his presentence custody and conduct credits were miscalculated.

There are no grounds for reversal. We order modification of Beltran's abstract of judgment to correct an uncontested clerical error identified by the Attorney General in her briefing. Subject to this modification, we affirm the judgments.

## STATEMENT OF THE CASE

The underlying events occurred in February and March of 2010 when a group of people from Arizona, working in conjunction with an individual who lived in California, carried out a series of home invasion robberies in the cities of Atwater, Clovis, Kerman, and Selma. The crimes were carefully coordinated and followed the same general pattern. The men would split up into two groups of lookouts and intruders, with the former stationing themselves in parked cars at strategically selected locations and maintaining communication with the intruders over cell phones and "walkie-talkies."

2.

The intruders, meanwhile, would enter homes and force the occupants inside to surrender cash, gold, and other items of value. Armed with guns, they threatened to kill their victims and used violence to extract information about the location of money and valuables.

A joint investigatory effort by law enforcement agencies in California and Arizona led to the arrest and prosecution of nine suspects. On March 22, 2011, a grand jury returned an 18-count indictment against appellants and their accomplices. Count 1 of the indictment charged each defendant with criminal conspiracy in violation of section 182, subdivision (a)(1). Landeros and Rodriguez were charged in Counts 2 through 18 for their respective roles in five robberies. Beltran was charged in Counts 11 through 18 for his participation in the last two of those robberies.

Appellants were tried before a Fresno County jury in October and November 2012. Several counts of the indictment were dismissed after the close of evidence on the substantive offenses. A bifurcated trial on gang allegations which had been pleaded pursuant to section 186.22, subdivision (b) ended with a hung jury. Appellants thereafter entered into a negotiated settlement agreement, pleading no contest to an added count of active participation in a criminal street gang (§ 186.22, subd. (a); Count 19) in exchange for the dismissal of all gang enhancement allegations. Trial evidence relevant to the claims on appeal is described within the body of our Discussion.

The first two robberies occurred on February 24, 2010 in Clovis and Atwater. The third robbery took place in Kerman on March 15, 2010. For their part in the Clovis robbery, Landeros and Rodriguez were each convicted of robbery in concert (§§ 211, 213, subd. (a)(1)(A); Count 2) and witness intimidation, i.e., using threats or violence to prevent or dissuade a victim or witness from reporting a crime (§ 136.1, subd. (c)(1); Count 4). In relation to the Atwater robbery, both were convicted of robbery in concert (Count 5) and assault by means likely to cause great bodily injury (§ 245, subd. (a)(1); Count 6). An enhancement allegation of personal use of a firearm (§ 12022.5, subd. (a))

3.

was found true as to Landeros in connection with Count 5. Landeros and Rodriguez were also found guilty of robbery in concert (Count 9) for the incident in Kerman.

The fourth and fifth robberies occurred on March 16, 2010 in Atwater and Selma. For the (second) Atwater robbery, Beltran, Landeros, and Rodriguez were convicted of robbery in concert (Count 11), assault with a semiautomatic firearm (§ 245, subd. (b); Count 13), and making criminal threats (§ 422; Count 14). On Count 11, enhancement allegations were found true as to each defendant for personal use of a firearm. Appellants suffered an additional conviction of robbery in concert in relation to the Selma incident (Count 16), and were found guilty of conspiracy as charged in Count 1.

Beltran was sentenced to an aggregate prison term of 21 years and eight months. The trial court imposed the upper term of nine years for the Count 11 robbery conviction and the upper term of 10 years for the related firearm enhancement. Beltran also received consecutive terms of two years for the Count 16 robbery conviction and eight months for the substantive gang offense in Count 19, which represented one-third of the middle term for each offense. A concurrent three-year term was imposed for Count 14, and punishment on all remaining counts was stayed.

Landeros was sentenced to an aggregate prison term of 32 years as follows: The upper term of nine years for the Count 5 robbery conviction and the upper term of 10 years for the related firearm enhancement, plus consecutive two-year terms (one-third of the middle term) for each robbery conviction under Counts 2, 9, 11, and 16, plus a consecutive term of 16 months (one-third of the middle term) for the second firearm enhancement, plus the full middle term of three years for witness intimidation under Count 4, and eight months (one-third of the middle term) for the substantive gang offense. A concurrent three-year term was imposed for Count 14, and punishment on all remaining counts was stayed.

Rodriguez was sentenced to an aggregate prison term of 30 years and eight months as follows: The upper term of nine years for the Count 11 robbery conviction and the

upper term of 10 years for the related firearm enhancement, plus consecutive two-year terms (one-third of the middle term) for each robbery conviction under Counts 2, 5, 9, and 16, plus the full middle term of three years for witness intimidation under Count 4, and eight months (one-third of the middle term) for the substantive gang offense. A concurrent three-year term was imposed for Count 14, and punishment on all remaining counts was stayed.

## DISCUSSION

**Beltran's Claims**

Beltran's arguments pertain to the Count 11 enhancement for personal use of a firearm during commission of the robbery in Atwater on the morning of March 16, 2010. He claims there is "no evidence" in the record to support the jury's finding. Alternatively, he contends any proven use of a firearm warranted no more than the middle term of four years, and that imposition of the aggravated 10-year term was an abuse of the trial court's discretion.

Background

At trial, victim Fernando Guzman described his encounter with six to eight robbers, each of whom was armed with a handgun. He had been holding his 10-month-old daughter in his arms when the "leader" of the group, Landeros, pointed a gun at him and directed him into the living room of the home.

At that point, someone took the baby from him and another person hit him in the back of the head with what he believed was a gun. The blow knocked Mr. Guzman to the ground and the men proceeded to punch and kick him for an extended period of time. He was then moved to another room, tied up, and left on the floor next to his daughter. Rodriguez held him there at gunpoint while the rest of the people ransacked his house.

When the perpetrators reconvened in the room where Mr. Guzman was being held, Beltran said, "Let's smoke him." Mr. Guzman understood this to mean "let's kill him," and asked Beltran not to murder him in front of his daughter. After someone else

5.

suggested that they shoot him in the leg, Rodriguez pressed a gun against the back of his thigh and cocked the hammer. When the trigger was pulled, Mr. Guzman heard a "click," followed by the sound of laughter from the entire group.

Mr. Guzman's testimony that each of the robbers had a gun was consistent with statements he made to a 911 dispatcher on the day of the incident. During questioning about Beltran's statements, the prosecutor asked, "Did that person have a gun?" Mr. Guzman replied, "I don't recall at the time." On cross-examination, Beltran's trial attorney attempted to establish that to the extent Beltran was armed, he never removed the gun from his waistband. Mr. Guzman answered "no" when defense counsel asked, "And other than the statement that you made that Mr. Beltran said 'let's smoke this motherfucker,' did you ever see him handling a weapon?"

At the sentencing hearing, Beltran's lawyer argued for leniency as to the firearm enhancement: "Mr. Beltran's use of that firearm is a lot different than other defendants in this case. He didn't waive the gun in the air. He didn't point at anybody. He didn't shoot the gun. The law allows the court discretion whether to impose [a] three, four or ten-year enhancement in this case. So being mindful of the evidence in this matter and Mr. Beltran's involvement in particular, I would respectfully urge the court to impose a midterm enhancement." Unpersuaded, the trial court said, "I do recall not only the participation of Mr. Rodriguez that we've been talking about here but also the fact that Mr. Guzman was pistol whipped in front of his baby … by other participants in the commission of that robbery. Of course[,] because of the way the robbery took place, he was not able to identify which individuals struck him with the pistol. But under the circumstances of the finding of the jury here, about Mr. Beltran's personal use of a firearm in the commission of that crime, the court finds that those circumstances of the use of that firearm are in aggravation."

Sufficiency of the Evidence

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) In considering the record as a whole, we "'must accept logical inferences that the jury might have drawn from the circumstantial evidence.'" *(People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Jurors resolve any conflicts in the evidence, so conflicting evidence is not necessarily insufficient evidence. (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1331.) "'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.'" (*People v. Abilez* (2007) 41 Cal.4th 472, 504.)

Section 12022.5, subdivision (a) provides that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years . . . ." The statute requires something more than being armed during the commission of an offense. However, "'[a]lthough the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct *which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies.* "Use" means, among other things, "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage."'" (*People v. Wilson* (2008) 44 Cal.4th 758, 806 (*Wilson*).) "'Thus, when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the

7.

underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure.'" (*Id.* at p. 807.) "Whether a gun is 'used' in the commission of an offense—'at least as an aid'—is broadly construed within the factual context of each case." (*Alvarado v. Superior Court* (2007) 146 Cal.App.4th 993, 1002, fn. omitted.)

The evidence permits a reasonable inference that Beltran was armed with a gun while inside of Mr. Guzman's home and that the victim was made aware of its presence. Mr. Guzman specifically testified to his knowledge that each of the perpetrators had a handgun. In reference to the moment when Beltran suggested that he be shot, Mr. Guzman's inability to recall whether Beltran had a gun "at the time" can be interpreted as confirming that he did in fact see Beltran in possession of a firearm at some point during the robbery. His inability to recall seeing Beltran "handling" the weapon does not mean Beltran did not otherwise make its presence known, e.g., as Beltran's own attorney suggested, by having the gun visible in the waistline of his pants. "Once displayed in such fashion, the threat of use sufficient to produce fear of harm becomes a use of that firearm proscribed by [section 12022.5, subdivision (a)]." (*People v. Jacobs* (1987) 193 Cal.App.3d 375, 381.)

A defendant's firearm "use" need not be strictly contemporaneous with the underlying felony, nor must the gun be continually displayed during the course of the offense. (*Wilson, supra,* 44 Cal.4th at p. 807.) The predicate crime in this case was robbery, which is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) "[F]or purposes of applying a firearm use enhancement, theft crimes such as robbery … continue beyond the time of the physical conduct constituting the offense until the perpetrator has reached a place of temporary safety. Accordingly, one who employs a firearm at any time on the continuum between the initial step of the offense and arrival at a place of temporary safety is subject to the enhancement." (*People v. Taylor* (1995) 32 Cal.App.4th 578, 582.) Pursuant to these

principles, the jury could have reasonably construed Beltran's display of the gun and his threat to "smoke" (i.e., shoot) Mr. Guzman as a use of the firearm for purposes of intimidating the victim in furtherance of the fear element of robbery. The jury also heard testimony that Beltran's statement was made in conjunction with expressions of frustration over not finding money in the house, and that he had asked the victim, "How much do you think your dad will pay for you if we [kidnap] you?" Viewing the record in the light most favorable to the judgment, we conclude there is sufficient evidence to support the jury's true finding on the gun enhancement allegation.

Sentencing Discretion

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) "In exercising his or her discretion in selecting one of the three authorized prison terms referred to in section 1170(b), the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing." (Cal. Rules of Court, rule 4.420(b).) "The court shall select the term which, in the court's discretion, best serves the interests of justice ... [and] shall set forth on the record the reasons for imposing the term selected…." (§ 1170, subd. (b).)

Sentencing decisions are reviewed under the abuse of discretion standard. (*People v. Jones* (2009) 178 Cal.App.4th 853, 860.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'"

[Citation.]  Second, a "'decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'  [Citation.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

Respondent contends that Beltran forfeited his right to challenge the trial court's sentencing decision by failing to object below.  We agree with part of this argument.  Since Beltran's counsel specifically advocated against imposition of the upper term for the firearm enhancement, he arguably preserved the issue of whether the trial court's decision fell outside the bounds of reason in light of the evidence in the record.  However, Beltran's additional contention that the trial court provided an insufficient statement of reasons by merely referencing the "circumstances of the use" of the firearm cannot be raised for the first time on appeal.  The California Supreme Court has repeatedly held that claims involving a trial court's failure to properly articulate the basis for its sentencing decisions are subject to forfeiture, "including 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or to give a sufficient number of valid reasons.'"  (*People v. Boyce* (2014) 59 Cal.4th 672, 730-731.)

The question is whether the evidence before the trial court could have reasonably been interpreted as showing circumstances in aggravation with respect to Beltran's use of a firearm during the robbery of Fernando Guzman.  "An aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.'"  (*People v. Black* (2007) 41 Cal.4th 799, 817.)  Such circumstances may be found to exist where the defendant's conduct involved a "threat of bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."  (Cal. Rules of Court, rule 4.421(a)(1).)

10.

Only one aggravating factor is required to impose an upper term sentence. (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

Beltran's remark about shooting Mr. Guzman occurred while the victim was restrained and lying helpless on the floor next to his infant daughter. Mr. Guzman had shown no resistance whatsoever; he told the robbers they could take anything in the house, gave them his wallet, and even provided the passcode for his bank card. He responded to Beltran's use of the firearm by saying, "If you are going to kill me, just don't do it in front of my daughter." Beltran's actions evidently caused the victim to not only fear for his life, but also to believe his child might witness her father's murder. Reasonable people could view such behavior as callous and gratuitously cruel. We therefore find no abuse of discretion in the trial court's decision to impose the upper term for the section 12022.5, subdivision (a) enhancement.

Correction to Abstract of Judgment

The abstract of judgment for Beltran incorrectly reflects the imposition of a ten-year term on a section 12022.5, subdivision (a) enhancement in connection with Count 1 rather than Count 11. Since no such findings were made under Count 1, the error is obviously clerical in nature and may be corrected on appeal. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We order that the abstract of judgment be corrected to conform to the jury's verdict and the trial court's oral pronouncement, i.e., to reflect that the Penal Code section 12022.5, subdivision (a) gun use enhancement is tied to Count 11.

**Claims of Landeros and Rodriguez**

Landeros and Rodriguez challenge the trial court's imposition of consecutive three-year terms for their respective convictions of witness intimidation under Count 4. Both argue that the sentence should have been stayed pursuant to section 654 in relation to the Count 2 robbery. Landeros further claims the trial court abused its discretion by ordering the sentence to be served consecutively rather than concurrently, and also disputes the trial court's calculation of his presentence custody and conduct credits.

11.

<u>Background</u>

Counts 2 and 4 stemmed from the robbery in Clovis on February 24, 2010. The victims were Gurmukh Singh, Darshan Walia, and two of their toddler-aged grandchildren. Mr. Singh was forced out of a shower at gunpoint, moved into the living room of the home, and ordered to lie face down on the floor. He was then tied up with electrical cords. Mr. Singh's trial testimony, which was provided through a Punjabi language interpreter, further indicated that the robbers somehow disabled the family's landline telephones and also made a death threat upon their departure from the residence. Landeros's and Rodriguez's conviction for using threats or violence to prevent or dissuade a victim from reporting a crime was apparently based on the following testimony:

Prosecutor: Prior to them leaving, did any of the people say anything to you about using the phone to call anyone?

Mr. Singh: Yes.

Prosecutor: What did they tell you?

Mr. Singh: They told me that don't call anyone, don't call the police at least for half an hour.

Prosecutor: Did they say if something would happen to you if you did call the police?

Mr. Singh: Yes, we were kill.

Prosecutor: They will kill?

Mr. Singh: Yes.

Prosecutor: They said that to you?

Mr. Singh: Yes.

Prosecutor: And this was before they left the house?

Mr. Singh: Yes.

12.

At sentencing, the trial court found that section 654 did not apply to Landeros's conviction under Count 4: "First of all, in the court's view the dissuading of the witnesses in that situation in Atwater One was not part of the crime. Was not even a necessary part of the crime of the robberies. I would agree with probation that the use of the firearm and the threats that took place within the residence, if there were some, were all part of a robbery in concert. But the gratuitous threat to the family on leaving not to call the police, threatening to come back and kill them and the children, I believe, as well as specific reference to the kids, was not a necessary part of that robbery. And it's particularly offensive, in the court's view. If the law doesn't demand it, it's certainly appropriate to impose [a] fully consecutive midterm as probation has suggested under [section] 1170.15." Later, while sentencing Rodriguez, the court reiterated its belief that "the circumstances of the threats conveyed to the family in the Clovis case support the giving of a fully consecutive sentence on Count Four...."

Section 654

Section 654 prohibits multiple punishment for crimes arising out of a single act or indivisible course of conduct. (§ 654, subd. (a); *People v. Hester* (2000) 22 Cal.4th 290, 294.) The statute is implicated when a defendant engages in an indivisible course of conduct with a single objective, but in doing so violates multiple sections or provisions of the Penal Code. "If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. [Citation.] If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1525 (*Perry*).) Whether a defendant acted pursuant to multiple objectives is a question of fact for the trial court, and its findings will be upheld on appeal if supported by substantial evidence. (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) "When a trial court sentences a defendant to separate

13.

terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*Ibid*.)

Appellants' arguments rely on the continuing nature of a robbery offense, i.e., the concept of the crime not being completed until the perpetrators reach a temporary place of safety. They reason that attempting to dissuade Mr. Singh from contacting the police must have been incident to and indivisible from the act of robbery because it occurred as the robbery was in progress. However, case law makes clear that multiple intents and objectives may exist for different crimes committed while a robbery is ongoing. (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 193.) It is likewise settled that section 654 "cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense." (*Id*. at p. 191; see, *People v. Saffle* (1992) 4 Cal.App.4th 434, 439 ["[A] separate act of violence against an unresisting victim or witness, whether gratuitous or to facilitate escape or to avoid prosecution, may be found not incidental to robbery for purposes of section 654. If the trier of fact determines the crimes have different intents and motives, multiple punishments are appropriate."].)

"At some point, the degree of force or violence used *or threatened* may evince 'a different and a more sinister goal than mere successful commission of the original crime,' i.e., an independent objective warranting multiple punishment." (*Perry*, *supra*, 154 Cal.App.4th at p. 1527, italics added.) Here, the record contains substantial evidence in support of the trial court's finding that the conduct underlying Count 4 was "gratuitous" and done pursuant to an objective separate from that of accomplishing the robbery. As noted, the robbers had already taken steps to prevent Mr. Singh from using the telephones in his home. He was lying on the floor with his arms and legs tied behind his back when the death threat was issued. Mr. Singh's daughter-in-law testified that she found him in the same location, fully restrained, when she arrived home after the robbers had departed.

14.

Given these circumstances, we find no error in the trial court's conclusion that threatening to return and kill the victim at a later point in time went beyond the means reasonably necessary to complete the robbery.

Sentencing Discretion

Landeros's claim regarding the imposition of a consecutive sentence for Count 4 is based on the trial court's reference to the so-called "Atwater One" robbery. Two robberies occurred on February 24, 2010; one in Clovis and one in Atwater, and both coincidentally involved victims with the surname of Singh. Young children were present during both robberies, and in each instance the robbers threatened to return and kill the victims shortly before fleeing the scene. Landeros thus argues that the trial court erroneously based its sentencing decision on the facts of the "Atwater One" robbery rather than the events in Clovis to which Count 4 actually pertained.

The claim is forfeited as a result of appellant's failure to object at the time of sentencing. As explained above, the forfeiture rule applies even in situations where "the stated reasons allegedly do not apply to the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*); accord, *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371-1372 and fn. 6 [appellate review precluded by failure to object to aggravating factors cited and relied upon by trial court for imposition of consecutive upper term sentence]; *People v. De Soto* (1997) 54 Cal.App.4th 1, 6-10 [same].) The rule is intended to promote judicial economy and is justified by the reality that defects in a trial court's statement of reasons "are easily prevented and corrected if called to the court's attention." (*Scott*, *supra*, 9 Cal.4th at p. 353.) Challenges to a legally unauthorized sentence are exempt from the forfeiture rule, but the errors alleged by Landeros do not give rise to this exception. "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case." (*Id*. at p. 354.) In contrast, "claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*Ibid*.)

15.

Forfeiture aside, Landeros has not otherwise shown reversible error. Although the trial court mistakenly referenced the "Atwater One" robbery, the evidence does not establish that it based the Count 4 sentence on the facts of that crime instead of those of the Clovis robbery. Out of the five robberies in which Landeros participated, only the Clovis incident involved a charge of witness intimidation within the meaning of section 136.1, subdivision (c)(1). While it appears the trial court simply misremembered the robbers threatening to harm Mr. Singh's grandchildren, there was no evidence of such threats being made in the Atwater robbery either. None of the victims testified to the perpetrators making threats that specifically referenced the children who were present. However, Mr. Singh's testimony indicated that the death threat was made in front of the other victims in the home, including his grandchildren, and his testimony is open to the interpretation that a collective threat was made against the family as opposed to him alone. It is also possible that the trial court relied upon the probation report, which claimed one of the perpetrators in the Clovis robbery had directly threatened Mr. Singh's grandchildren, "ordering them to sit on the couch or they would be shot," and later "threatened to return and kill the family if they called police." Regardless, the trial court's sentencing decision was expressly motivated by the unnecessary and gratuitous nature of the threat, and this primary factor is supported by the evidence in the record. We therefore reject appellant's claim.

Calculation of Presentence Credits

A criminal defendant is entitled to credit against his or her sentence for all days spent in custody while awaiting trial and sentencing, up to and including the date when the sentence is imposed. (§ 2900.5, subd. (a); *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.) Additional presentence credit may be earned based on work time and good behavior, which is commonly referred to as "conduct credit." (§ 4019, subds. (b) & (c); *People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) Pursuant to section 2900.5, presentence credits begin to accrue on the first day of custody, which in many

16.

cases will be the same day as the defendant's arrest. However, such credit "shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." (§ 2900.5, subd. (b).) "[W]here a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*People v. Bruner* (1995) 9 Cal.4th 1178, 1193-1194.)

Landeros was awarded 1,232 days of presentence credits based on 1,072 days of custody credit and 160 days of conduct credit, calculated from the purported accrual date of August 23, 2010 through July 29, 2013. There was little discussion of the issue at sentencing. The trial court said, "Time credits, Mr. Landeros – I'm assuming these are right, counsel – 1232 days, 1072 actual, 160 conduct pursuant to [section] 2933.1." Defense counsel replied, "Yes." The court thereafter inquired, "Right?" Counsel responded, "Correct."

Landeros now contends that he was arrested in Arizona on April 20, 2010, and is therefore entitled to additional days of presentence credit. Respondent does not disagree that Landeros was arrested in April 2010, but claims the arrest was for a probation violation related to a 2009 conviction. In support of her position, the Attorney General directs us to an online case docket from the Maricopa County Superior Court and also cites to evidence contained in the probation report from the current case. Respondent's theory is generally consistent with statements by a Fresno County correctional officer whose trial testimony indicated that Landeros was admitted to the Fresno County Jail on August 24, 2010. Appellant makes a partial concession in his reply brief by acknowledging the out-of-state probation violation and related proceedings, but maintains there were at least 36 days of incarceration between April 20, 2010 and August 23, 2010

17.

in which he "was neither serving his term on the probation violation nor receiving presentence credits in this case."

Section 1237.1 provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court…. The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the calculation of presentence custody credits upon the defendant's request for correction." An appellate court may resolve presentence credit calculation issues in the first instance if doing so will serve the interests of judicial economy (*People v. Jones* (2000) 82 Cal.App.4th 485, 493), but the appellant has the burden to affirmatively demonstrate his entitlement to credit for any particular time period. (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 81.) The present claim hinges on a factual dispute which cannot be resolved by the meager and ambiguous evidence in the record on appeal. In short, appellant has not carried his burden. If he wishes to pursue the issue further, he may seek relief in the trial court. (*People v. Shabazz* (2003) 107 Cal.App.4th 1255, 1259; *People v. Culpepper* (1994) 24 Cal.App.4th 1134, 1139; *People v. Fares* (1993) 16 Cal.App.4th 954, 958 ["There is no time limitation upon the right to make the motion to correct the sentence."].)

## **DISPOSITION**

The judgments are affirmed.  The trial court is ordered to prepare an amended abstract of judgment for Gilbert Beltran which accurately reflects that its imposition of a consecutive 10-year term for the section 12022.5, subdivision (a) enhancement is tied to Beltran's Count 11 conviction.  The trial court shall send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

_____
GOMES, J.

WE CONCUR:


_____
HILL, P.J.


_____
DETJEN, J.

19.